Argued and submitted January 30, 2014, reversed and remanded July 8, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TREVOR SCOTT BOOTH,
*Defendant-Appellant.*

Union County Circuit Court
F17603; A150751

355 P3d 181

Ingrid A. MacFarlane, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Matthew Preusch, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Rebecca M. Johansen, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Egan, Judge, and De Muniz, Senior Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Defendant appeals a judgment of conviction for one count of unlawful possession of methamphetamine, ORS 475.894, assigning error to the trial court's denial of his motion to suppress evidence discovered during a search of his car following a traffic stop. Defendant argues that the police officer extended defendant's initial, lawful detention of defendant for a traffic offense without reasonable suspicion to do that and, therefore, the evidence obtained during the search must be suppressed. The state concedes that the police unlawfully extended the traffic stop; however, it asserts that we should affirm the trial court under the "right for the wrong reason" doctrine, *see Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (setting out conditions under which a reviewing court may, as a matter of discretion, affirm the ruling of a lower court on an alternative basis), because defendant was advised of his right to refuse consent and testified that he understood that right. In the state's view, "[t]hat mitigating circumstance was sufficient to attenuate defendant's consent from the unlawful stop," rendering the evidence nonetheless admissible.[1] Defendant responds that we cannot affirm on that alternative basis because, among other reasons, the record could have developed differently had the attenuation issue been raised in the trial court. We agree with defendant; accordingly, we reverse and remand.

We review the trial court's denial of a suppression motion for legal error and are bound by the trial court's findings of historical facts that are supported by evidence in the record. *State v. Bailey*, 356 Or 486, 489, 338 P3d 702 (2014). With one exception noted below, the pertinent facts in this case are undisputed.

Oregon State Police Trooper Macy stopped defendant for speeding at 7:45 a.m. on a September morning. As he approached the driver's side of defendant's car, he noticed

---

[1] In a memorandum of additional authorities, the state points to a trio of cases involving attenuation that the Oregon Supreme Court decided after this case was briefed and argued, namely, *State v. Unger*, 356 Or 59, 333 P3d 1009 (2014), *State v. Lorenzo*, 356 Or 134, 335 P3d 821 (2014), and *State v. Musser*, 356 Or 148, 335 P3d 814 (2014).

that defendant was wearing a long-sleeved jacket or sweater that was zipped up to his chin, which seemed unusual to Macy because it was a hot morning. Macy thought it could have been "to cover up any sort of scars, marks, tattoos, anything like that on his arms." He also noticed that defendant was "very nervous." Macy asked defendant for his driver license, registration, and insurance, and, when defendant handed them to the officer, Macy testified that defendant was shaking visibly and displayed "facial twitches," which Macy recognized as a sign of stimulant use. Macy asked defendant why he was so nervous; defendant responded that "[h]e doesn't like the presence of police officers." Macy also asked defendant if he had any weapons or marijuana in the car; defendant said "no" to both questions. Macy then asked if he had any methamphetamine in the car, and defendant looked away and said, "not that he knew of." Because of defendant's change in demeanor when asked about methamphetamine, Macy thought there might be methamphetamine in the car.

Macy then went back to his patrol car and contacted dispatch. Because of defendant's degree of nervousness and answer to the question about methamphetamine, Macy, in addition to his normal request for checks and warrants, also asked the dispatcher to check whether defendant had any drug-related offenses in his criminal history. The dispatcher informed Macy that defendant had a prior drug conviction. Macy returned to defendant's car, told him that he thought defendant was in possession of methamphetamine, and asked defendant for consent to search the car. He gave defendant a consent form that stated, among other things, "You have the right to refuse to consent to a search." Macy asked defendant to read the form and whether he understood the form. According to Macy, defendant said that he did and agreed to the search, but he asked Macy to "hurry up" because he needed to get to work and was late. Defendant's account differs. He testified that he had initially refused consent because he was late for work but had changed his mind when Macy told him that he would then have to wait more than two hours for a drug dog to show up.[2] Defendant

---

[2] After defendant testified, the prosecutor recalled Macy, who testified that he did not remember—and there is nothing in his police report indicating—that he had threatened to call the K-9 unit. Macy also stated that he had just called the

also testified that he had read the form and understood that he had the right to refuse to consent to the search.

Macy asked defendant to get out of the car, patted defendant for weapons, and asked defendant to speak to his "cover officer." Macy then searched the car and found a glasses case behind the driver's seat; inside the case, Macy found a spoon with methamphetamine residue, a cotton ball, and "other drug paraphernalia."

Defendant was arrested and charged with unlawful possession of methamphetamine. Before trial, he filed a motion to suppress the evidence discovered during the search; at the hearing on his motion, defendant argued that the officer had obtained the evidence by unlawfully extending defendant's detention for a traffic stop without reasonable suspicion of further criminal activity.[3] Specifically, defendant contended that Macy had unlawfully extended the search when he asked defendant why he was so nervous and whether he possessed any weapons, marijuana, or methamphetamine before Macy returned to his patrol car to run defendant's license and, further, when Macy returned to defendant's car and, instead of issuing a citation, told defendant that he believed that defendant possessed methamphetamine and requested consent to search the car. *See State v. Rodgers/Kirkeby*, 347 Or 610, 623, 227 P3d 695 (2010) (police may not unreasonably extend the duration of an otherwise lawful traffic stop to investigate matters unrelated to the reason for the stop without reasonable suspicion about those matters).[4]

---

K-9 handler; according to Macy, the handler told Macy that he had not received a call from Macy on that day. The trial court did not address the factual discrepancy between Macy's and defendant's testimony because, as discussed below, it concluded that Macy had not unlawfully extended the traffic stop, and defendant had not raised the issue of coercion in his suppression motion.

[3] Defendant apparently prepared a memorandum supporting his motion to suppress to which he referred during the hearing; however, as the trial court noted, the memorandum is not in the trial court file.

[4] Although defendant cited, in his written motion to suppress, various provisions of the Oregon Constitution, the federal constitution, and Oregon statutes as authority for his motion, defendant's argument at the hearing, premised largely on *State v. Rodgers*, 219 Or App 366, 182 P3d 209 (2008), *aff'd sub nom State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010), focused solely on the principles underlying Article I, section 9, of the Oregon Constitution. That provision states, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

The state's chief argument in response was that Macy did not need reasonable suspicion because defendant's consent "was obtained during the course of a traffic stop, not after the traffic stop should've ended"; its "fallback" position was that Macy had reasonable suspicion of further criminal activity, thus justifying any extension of the stop. The state did *not* argue, as it does now, that, even if the stop was unlawfully extended, defendant's consent was sufficient to attenuate the unlawful police conduct, permitting admission of the evidence. *See State v. Unger*, 356 Or 59, 76, 333 P3d 1009 (2014) (state bears burden of proving that defendant's consent to search following unlawful stop was not product of police exploitation of unlawful conduct).

The trial court agreed with the state's first argument. The extent of the court's findings and conclusions are as follows:

"This is a case in which the officer stopped the Defendant for speeding. Upon stopping him, he noticed the Defendant was, his jacket or—he, the officer testified it was a sweater, a zip up sweater. The Defendant said it was his work windbreaker. It was zipped up to the neck. And the officer felt that the Defendant was unduly nervous. He asked for and subsequently received the Defendant's documents. And when handing them to the officer, the Defendant was shaking visibly and that there was a twitch in his face.

"The officer in receiving the documents asked four questions about why are you so nervous. To which the Defendant responded he didn't like being stopped by police officers and that they made him nervous. He asked if he had any weapons in the vehicle, the officer. And the Defendant said no. He asked if there was any marijuana in the vehicle, and the Defendant said no. And he asked if there was any methamphetamine in the vehicle and the Defendant said not to my knowledge. I believe that's what he said. 'Not that I know of.'

"The officer then went back to his car, called in dispatch and asked for his normal wants and warrants and history, and asked also for a criminal history check. That came back. There is no evidence that extended the request for information from dispatch. And the officer asked for consent to search, which consent was granted.

"There is no evidence other than those brief questions that this was [*sic*] in any way extended the stop. And I specifically asked that the State specifically ask those questions of the officer, and he was cross-examined about that. And there's no evidence before the Court that there was an extension.

"The case law as cited allows an officer to question as long as there is not an unreasonable extension of the traffic stop. I do not find from the evidence that there was such an unreasonable extension, and I therefore am going to deny your motion to suppress."

Defendant subsequently entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. ORS 135.335(3).

On appeal, defendant reiterates the argument that he made below—that Macy violated Article I, section 9, by extending the lawful traffic stop of defendant without reasonable suspicion of further criminal activity. The state concedes that the traffic stop was unlawfully extended. We agree with and accept the state's concession. *See Rodgers/ Kirkeby*, 347 Or at 623 ("Police authority to detain a motorist dissipates when the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation (if any) is completed or reasonably should be completed. Other or further conduct by the police, beyond that reasonably related to the traffic violation, must be *justified* on some basis other than the traffic violation." (Emphasis in original.)); *State v. Dennis*, 250 Or App 732, 737, 282 P3d 955 (2012) (state has burden of proving that investigation of unrelated criminal matter during traffic stop occurred during unavoidable lull in investigation of the traffic stop); *State v. Hendon*, 222 Or App 97, 106, 194 P3d 149 (2008) (where there was no evidence that the request for consent to search occurred during an "unavoidable lull" in the investigation, "the state has not established that [the officer] did not detain defendant beyond the time reasonably necessary to investigate the initial lawful basis for the stop and we must conclude that [the officer] unlawfully prolonged the duration of the stop when he asked defendant to consent to a search without reasonable suspicion of other criminal activity").

However, as noted, the state argues that we can affirm the trial court on the alternative basis that, because defendant's consent was sufficiently attenuated from the unlawful police conduct, the evidence is nonetheless admissible. Specifically, in the state's view, because defendant was advised of his right to refuse to consent to a search and he testified that he understood that right, his consent was not the product of police exploitation of the unlawful extension of the stop and, consequently, the evidence is admissible. *See State v. Lorenzo*, 356 Or 134, 144, 335 P3d 821 (2014) (observing that "advising individuals that they need not consent to a request to search * * * would make it easier for reviewing courts to determine that, notwithstanding any prior illegality, the individual knew that he or she had a constitutional right to refuse consent—and that, if the individual gave consent, it was voluntary and not the product of exploitation"). In other words, according to the state, the trial court's denial of defendant's suppression motion was "right for the wrong reason."

The problem with the state's position is that it did not make that argument below and, hence, the trial court did not consider it.

> "[W]hen a defendant has established that an illegal stop or an illegal search occurred and challenges the validity of his or her subsequent consent to a search, the state bears the burden of demonstrating that (1) the consent was voluntary; *and* (2) the voluntary consent was not the product of police exploitation of the illegal stop or search."

*Unger*, 356 Or at 74-75 (emphasis added). Applying those principles here, even assuming that defendant voluntarily consented to the search following the unlawful extension of the stop, for the evidence to be admissible, the state had to prove that the police did not exploit that illegality to obtain defendant's consent. *Id.* at 74 ("Exploitation analysis recognizes that police conduct that constitutes an illegal stop or an illegal search may fall short of coercing a defendant to consent to a subsequent request to search, but nevertheless may require suppression because the police took advantage of information gained from their illegal conduct or some other aspect of that conduct to obtain consent—an advantage that they would not have had had the police stayed

within the bounds of the law." (Citing *State v. Hall*, 339 Or 7, 27-28, 115 P3d 908 (2005).)).

Determining whether the police exploited their unlawful conduct to obtain consent "involve[s] a 'fact-specific inquiry into the totality of the circumstances to determine the nature of the causal connection.'" *Unger*, 356 Or at 79-80 (quoting *Hall*, 339 at 35). In addition to the temporal proximity between the unlawful police conduct and the voluntary consent, and the existence of mitigating or intervening circumstances, *Hall*, 339 at 35, 35 n 21, relevant considerations also include "the nature, extent, and severity of police misconduct—and relatedly, the purpose and flagrancy of that misconduct," *Unger*, 356 Or at 83.

For us to affirm a trial court's ruling on a basis other than that on which the court relied, (1) "the facts of record [must] be sufficient to support the alternative basis for affirmance"; (2) "the trial court's ruling [must] be consistent with the view of the evidence under the alternative basis for affirmance"; and (3) "the record [must] materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below." *Outdoor Media Dimensions Inc.*, 331 Or at 659-60.

> "In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance."

*Id.* at 660 (emphasis in original).

Here, the trial court never considered the evidence on which the state's alternative argument is premised; that is, the trial court did not engage in the fact-specific inquiry necessary to determine whether the state had carried its burden of proving that "the consent was independent of, or only tenuously related to, the unlawful police conduct," including "an assessment of the actual police misconduct." *Unger*, 356 Or at 86. Moreover, the record may very well have developed differently had the state raised the lack-of-exploitation argument below. For example, as noted, there is a factual dispute in the record about whether Macy

threatened defendant with calling a drug dog when Macy asked defendant for consent to search, a dispute that the trial court was not required to—and did not—resolve, but which is highly relevant to the exploitation analysis. *See Unger*, 356 Or at 83 ("nature, extent, and severity of police misconduct" are relevant considerations in determining whether the state exploited its illegal conduct in obtaining defendant's consent). Had the state raised the exploitation issue with the trial court, defendant would undoubtedly have sought to adduce additional facts about those circumstances—including challenging Macy's hearsay testimony regarding whether Macy had called the K-9 handler that day. Defendant may also have sought to introduce evidence about the actions of the "cover officer" who was, apparently, present at the scene. Finally, defendant likely would have attempted to adduce evidence relevant to the purpose and flagrancy of Macy's conduct in extending the traffic stop. *Id.* ("purpose and flagrancy" of police misconduct relevant factors in exploitation analysis). However, because the state did not argue that, even if the stop was unlawfully extended, the police did not exploit that unlawful conduct in obtaining defendant's consent to search, there was no reason for defendant to do that. In short, we disagree with the state that the record here is "fully developed" with respect to the totality of the circumstances surrounding defendant's consent to search. For those reasons, we decline to affirm the trial court on the alternative basis presented by the state. *Cf. State v. Heater*, 271 Or App 538, 351 P3d 776 (2015) (declining to consider lack of exploitation as alternative basis for affirmance where state made argument for first time on remand from Supreme Court following issuance of *Unger*, *Lorenzo*, and *State v. Musser*, 356 Or 148, 335 P3d 814 (2014)).

In sum, the trial court erred in concluding that the officer did not unlawfully extend the traffic stop in violation of Article I, section 9. Moreover, the record is insufficient for us to affirm the court's decision under the alternative basis advanced by the state. Accordingly, we conclude that the trial court erred in denying defendant's suppression motion.

Reversed and remanded.