Submitted August 19, 2015, reversed and remanded November 16, 2016

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**SEAN ULYSSES DAWSON,**
*Defendant-Appellant.*

Washington County Circuit Court
C121293CR; A155787

386 P3d 165

Peter Gartlan, Chief Defender, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant. Sean Dawson filed the supplemental brief *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Peenesh H. Shah, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

**FLYNN, J.**

Defendant appeals from a judgment of conviction for unlawful delivery of cocaine, possession of cocaine, and criminal forfeiture. His first assignment of error challenges the trial court's denial of defendant's motion to suppress evidence that the state obtained through a search of defendant's vehicle during a traffic stop. Defendant argues that the search was unlawful, despite defendant's voluntary consent to the search, because the request for consent to search followed an unlawful extension of the traffic stop. We conclude that the officer unlawfully extended the traffic stop when he questioned defendant about a new criminal matter without reasonable suspicion to investigate that crime, rather than going forward with processing the traffic infraction. The record does not permit us to affirm the trial court on the state's alternative theory, that the evidence need not be suppressed because defendant's consent to search was independent of the unlawful police conduct. Accordingly, we reverse without reaching several evidentiary challenges that defendant raises in his second through fourth assignments of error.

## I. FACTUAL BACKGROUND

We begin by describing the facts pertinent to defendant's motion to suppress, in a manner consistent with the trial court's ruling. *See State v. Watson*, 353 Or 768, 796, 305 P3d 94 (2013) ("[W]e are bound by the trial court's findings of historical fact to the extent that those findings are supported by evidence in the record."). Defendant was initially stopped because the sport utility vehicle (SUV) that he drove had no front license plate, a violation of ORS 803.540(1)(b). When the officer asked defendant if he knew that the SUV did not have a front license plate, defendant responded, "No, I didn't. It's not my car." When the officer asked who owned the car, defendant responded, "My—my friend. I'm just borrowing it." Defendant could not provide the registration for the SUV, but gave the officer his driver's license and an insurance card that named defendant as the insured. The insurance card specifically identified the SUV that defendant was driving and it had been issued several months before.

The officer was suspicious that defendant was driving the SUV without permission, and therefore committing the crime of unauthorized use of a vehicle (UUV). *See* ORS 164.135. The officer returned to his patrol car and ran the license plate number through a database search, which told him the name of the registered owner and that the SUV had not been reported stolen. However, that did not eliminate the officer's suspicion that defendant was driving the SUV without permission, so he also ran defendant's name through various law enforcement databases in an effort to determine if defendant had some connection to the registered owner. The databases showed no connection between defendant and the registered owner.

The officer then returned to the car to ask more questions about defendant's connection to the registered owner of the SUV. The officer told defendant that the officer "thought it was suspicious that he was borrowing a vehicle and that he had an insurance card with only his name on it." Defendant responded that he had "been borrowing it for a little bit" from a friend named "Doug." Doug was not the name of the registered owner. Defendant also provided the officer with a phone number for "Doug," and the officer returned to his car to call the number. The call was picked up by an answering machine that gave no name for the person to whom the number belonged. The officer remained concerned that defendant was using the SUV without permission, but he shifted to running a driving and "wanted person inquiry" on defendant. Defendant also had a passenger, and the officer ran a "wanted person inquiry" on her as well.

While waiting for the results of those inquiries, the officer returned to defendant and asked him to step out of the SUV. In part, the officer made this request because, throughout the encounter, defendant had been watching the officer constantly through his side mirror, as if defendant were "tracking" him. In part, he made the request because the height of the SUV's windows prevented the officer from seeing defendant's hands, which the officer felt put him "at a disadvantage." And in part, the officer asked defendant to step out because he still suspected that defendant was not "supposed to have this vehicle."

Once defendant had stepped out of the vehicle, the officer noticed a faint odor of marijuana coming from the vehicle. A question about the presence of "guns, drugs, or illegal documents" followed; defendant admitted to having "a joint in the ashtray"; and defendant then gave consent when the officer asked for permission to search the vehicle. The search of the vehicle revealed two packages of cocaine and a substantial amount of cash.

## II. PROCEDURAL BACKGROUND

Before trial, defendant moved to suppress the evidence that the police found in the vehicle. He argued that the officer lacked reasonable suspicion to extend the duration of the traffic stop to question defendant about the possible crime of UUV and also lacked a reasonable safety concern to justify having defendant step out of the vehicle and, thus, that the subsequent search was not lawful. The state argued that the officer did not unlawfully extend the duration of the traffic stop, because his initial questions into defendant's authority to use the SUV fell within the permissible scope of processing the traffic infraction, and that any investigation beyond the scope of a traffic stop was justified by reasonable suspicion that defendant was committing the crime of UUV. The state did not make the alternative argument that, even if the officer unlawfully extended the stop, the motion to suppress should be denied because defendant's consent to search was sufficiently attenuated from any such extension.

The trial court at one point expressed doubt that the officer had reasonable suspicion to investigate the crime of UUV, but denied defendant's motion to suppress because the court concluded:

"It was a lawful search. I don't think the officer went beyond the scope of what his investigation would allow. It was a search that—that subject to—he got proper consent."

A jury found defendant guilty, and he appeals from the judgment of conviction for unlawful delivery of cocaine, ORS 475.880, unlawful possession of cocaine, ORS 475.884, and criminal forfeiture, ORS 131.582.

## III.   DISCUSSION

On appeal, defendant does not challenge the trial court's determination that he voluntarily consented to the search. However, he argues that the evidence found during the search must be suppressed because defendant gave consent after the officer unlawfully extended the traffic stop to investigate the crime of UUV.

We begin with a review of relevant legal principles. Without a warrant or a valid exception to the warrant requirement, a search is "*per se* unreasonable,'" and in violation of Article I, section 9, of the Oregon Constitution. *State v. Unger*, 356 Or 59, 72, 333 P3d 1009 (2014) (quoting *State v. Baker*, 350 Or 641, 647, 260 P3d 476 (2011) (emphasis in original)). A defendant's voluntary consent to a search is one such exception. *State v. Musalf*, 280 Or App 142, 151, 380 P3d 1087 (2016). However, if the consent follows an unlawful stop or unlawful search, evidence obtained in the search must, nevertheless, be suppressed if the police "exploited [an] illegality" to obtain the evidence. *Unger*, 356 Or at 71. As the Supreme Court explained in *Unger*,

> "When, for example, the police stop an individual without reasonable suspicion, the individual's liberty is restrained in violation of Article I, section 9. Because the person stopped is unable to terminate the interaction with police, he or she is subject to police authority in excess of constitutional bounds and is thereby placed at a disadvantage relative to the constitutional position that he or she would have occupied in the absence of the illegal police interference."

*Id.* at 73. Thus, we first consider whether defendant's liberty was "restrained in violation of Article I, section 9." *See id.*

### A.   *The Permissible Scope of the Traffic Stop*

When an officer has probable cause to believe that a person has committed a traffic violation, the officer may lawfully stop the person and investigate. ORS 810.410(3)(b); *Watson*, 353 Or at 774 (explaining that requiring a driver to pull over under those circumstances is a permitted "stop and a seizure for Article I, section 9, purposes"). However, both Article I, section 9, and ORS 810.410(3)(b), restrict the permissible scope of that stop to activities that are "'reasonably

related to that traffic infraction, the identification of persons, and the issuance of a citation (if any)[.]'" *Watson*, 353 Or at 778 (quoting *State v. Rodgers/Kirkeby*, 347 Or 610, 623, 227 P3d 695 (2010)); *see also State v. Alvarado*, 257 Or App 612, 627, 307 P3d 540 (2013) (explaining that an officer unlawfully extends a stop when, after the officer has all of the information necessary to complete the traffic investigation, the officer extends the duration of the stop by starting an investigation into a new matter that is unrelated to the traffic stop).

On appeal, there is no dispute that the officer had probable cause to stop defendant to investigate the traffic infraction of driving without a front license plate, ORS 803.540(1)(b). Defendant argues, however, that the officer's second round of questions—after identifying the registered owner of the car—went beyond those reasonably related to that traffic infraction. We agree.

We have explained that, although an officer conducting a traffic stop "is free to question a motorist about matters unrelated to the traffic infraction during an unavoidable lull in the investigation, such as while waiting for the results of a records check," the officer is not "free to question the motorist about unrelated matters as an alternative to going forward with the next step in processing the infraction, such as the writing or issuing of a citation." *State v. Dennis*, 250 Or App 732, 734, 282 P3d 955 (2012). Here, when the officer returned to question defendant about the name and contact information for the friend from whom defendant said he had borrowed the SUV, he was investigating his suspicions that defendant was committing the crime of UUV, a matter unrelated to the purpose of the traffic stop, instead of going "forward with the next step in processing the infraction." Nor did the questioning occur during an "unavoidable lull," because the officer testified that he returned to question defendant about his connection to the registered owner before running the license and "wanted persons" inquiries.

The state contends, however, that the officer's questions about defendant's permission to drive the vehicle were reasonably related to the traffic stop, because the officer sought to determine if defendant had permission to drive

away at the end of the traffic stop. The state relies on *Watson*, in which the Supreme Court observed that "[w]hen police officers detain a person on probable cause of violating a traffic law, it is reasonable to determine whether the person is licensed to continue on his or her way after the encounter ends." 353 Or at 782 (internal quotation marks omitted). But the state reads too much into that statement. *Watson*'s reference to a "license to continue" was a reference to a driver's license. The officer in *Watson* stopped the defendant for a traffic infraction and then conducted a "records check with the purpose of verifying defendant's driving privileges." *Id.* at 782. The detention to complete that check was reasonably related to the investigation of a traffic stop unless "unreasonably lengthy." *Id.*

Here, the officer extended the duration of the traffic stop to investigate a matter beyond whether defendant had valid driving privileges. After his initial conversation with defendant, the officer was in possession of defendant's driver's license and could have proceeded with processing the traffic infraction, including running a records check to verify defendant's driving privileges. Instead, the officer moved on to investigating an unrelated matter—the crime of UUV—"as an alternative to going forward with the next step in processing the infraction such as the writing or issuing a citation." *See Dennis*, 250 Or App at 734 (internal quotation marks omitted). Thus, the officer had extended the stop beyond the limits that Article I, section 9, places on police activity during the lawful traffic stop. To justify that extension, the state needed to identify an "independent constitutional justification" for the questioning. *Watson*, 353 Or at 781.

### B.  *Reasonable Suspicion to Investigate UUV*

Defendant argues that the officer unlawfully extended the traffic stop because he lacked reasonable suspicion to conduct his investigation into whether defendant was committing the crime of UUV. *See State v. Barber*, 279 Or App 84, 89, 379 P3d 651 (2016) (An officer's extension of a traffic stop to conduct a criminal investigation must be supported by reasonable suspicion in order to be lawful.). Reasonable suspicion to support a stop, including the extension of a

traffic stop, requires both that "'the officer subjectively believes that the person has committed or is about to commit a crime'" and that the officer's "'belief is objectively reasonable in light of the totality of the circumstances existing at the time of the stop.'" *State v. Bray,* 281 Or App 435, 443, 380 P3d 1245 (2016) (quoting *State v. Maciel,* 254 Or App 530, 535, 295 P3d 145 (2013)).

Although defendant does not dispute that the officer subjectively suspected defendant of committing the crime of UUV, he contends that the officer's suspicion was not objectively reasonable. Whether an officer has reasonable suspicion to extend a stop is determined as of the time that the stop becomes extended. *Alvarado,* 257 Or App at 628. To be objectively reasonable, an officer's suspicion that the person has committed or is about to commit a crime "must be based on specific and articulable facts." *Bray,* 281 Or App at 443 (internal quotation marked omitted).

The state argues that three facts gave the officer objectively reasonable suspicion, at the point that he extended the stop, that defendant was committing the crime of UUV: (1) the officer had observed defendant behave nervously; (2) defendant's response that he borrowed the vehicle from "a friend" was "vague"; and (3) the officer's database searches revealed no connection between defendant and the registered owner of the vehicle. We disagree.

The first fact to which the state points—defendant's nervous behavior—adds little to the reasonable suspicion inquiry, as we have repeatedly emphasized. *See, e.g., Alvarado,* 257 Or App at 629 ("defendant's anxious behaviors contribute very little to our reasonable suspicion calculus"); *State v. Meza-Garcia,* 256 Or App 798, 804, 303 P3d 975 (2013) ("defendant's nervousness adds little, if any, weight toward reasonable suspicion"); *State v. Berry,* 232 Or App 612, 618, 222 P3d 758 (2009), *rev dismissed,* 348 Or 71, 228 P3d 582 (2010) ("there is nothing inherently suspicious about * * * being nervous when pulled over by a police officer").

The second fact—defendant's vague, or possibly evasive, statement that he was borrowing the SUV from "[m]y—my friend"—is similarly a fact that does little to

make the officer's suspicion objectively reasonable. *See State v. Espinoza-Barragan,* 253 Or App 743, 753, 293 P3d 1072 (2012) (facts that the defendant was nervous and was evasive about his intended destination, even considered in combination with other facts, did not give rise to reasonable suspicion); *see also Berry,* 232 Or App at 617-18 (defendant's false explanation for turning into a particular parking lot, in combination with nervousness, furtive movements, and prior presence at a known location for drug trafficking did not give rise to reasonable suspicion that the defendant possessed drugs). Although the officer expected defendant to volunteer the name of the friend from whom he borrowed the car, the officer had not asked defendant to identify the friend, and defendant was under no obligation to volunteer that information. As we have held, a "defendant's evasive reaction to questioning that he [was] constitutionally entitled to refuse to answer," even in combination with past criminal activity, does not provide reasonable suspicion of current criminal activity. *See State v. Frias,* 229 Or App 60, 65-66, 210 P3d 914 (2009) (concluding that the defendant's evasive response about why he had been visiting a friend, combined with officer's knowledge that the defendant had history of drug use, did not create reasonable suspicion of current drug use).

The remaining circumstance that the state identifies— the officer's inability to find a connection between defendant and the registered owner—creates no reason to suspect that defendant was driving the vehicle without permission, at least given the other circumstances of this case. Although we evaluate whether the officer's suspicion is objectively reasonable "in light of the officer's experience," *State v. Martin,* 260 Or App 461, 470, 317 P3d 408 (2014), the officer offered no reason why he expected to find records in an official database to connect the owner of a vehicle to a "friend" to whom the owner lent the vehicle. While finding a reported connection may have alleviated the officer's suspicion, the lack of a connection in official databases did not make his suspicion objectively reasonable.

Moreover, any suspicion created by the identified facts must be considered in light of the other facts that were known to the officer at the time he extended the stop and

which make any continuing suspicion of UUV not objectively reasonable. Specifically, when the officer searched the official databases to investigate his initial suspicion of UUV, his search confirmed that the SUV had not been reported stolen. *Compare State v. Ricks*, 166 Or App 436, 440-42, 998 P2d 234, *adh'd to as modified on recons*, 168 Or App 552, 7 P3d 673, *rev den*, 331 Or 429 (2000) (objectively reasonable suspicion that the defendant was driving a car without permission supported by fact that, when officer spoke with the registered owner's son, the son confirmed that to his knowledge there was no reason that the car should have been in the observed location or driven by a person matching the defendant's physical description). Although the officer explained that the lack of a theft report, in his experience, often just means that there has been a recent and not-yet reported theft, the possibility of that scenario is severely undermined by defendant's proof of insurance showing that he had been insured to drive the SUV for several months preceding the stop. As the trial court expressed it, "somebody probably is not going to get insurance on a car that they've stolen."

Even if the proof of insurance and lack of a theft report do not preclude the possibility that defendant was driving the SUV without permission, reasonable suspicion requires more. *See Alvarado*, 257 Or App at 629 (although circumstances identified by the officer were consistent with criminal activity, they did not create objectively reasonable suspicion of criminal activity). Thus, at the time that the officer extended the traffic stop by returning to question defendant about his connection to the owner of the SUV, the officer did not have reasonable suspicion that defendant was committing a crime.

C.  *Validity of Consent Following an Unlawful Stop*

That illegal extension of the traffic stop, given the record in this case, requires suppression of the evidence obtained from the search of the SUV. As the Supreme Court has explained, once a defendant who challenges the validity of consent to search establishes that his or her consent followed an illegal stop or an illegal search, "the state bears the burden of demonstrating" not only that the consent was voluntary but also that "the voluntary consent was not the

product of police exploitation of the illegal stop or search." *Unger*, 356 Or at 75. That exploitation analysis requires the court to consider whether the state proved that "the consent was independent of, or only tenuously related to, the unlawful police conduct." *Id.* at 86.

Here, both the state and defendant agree that the information that the officer learned during the unlawful extension of the stop further heightened his suspicion that defendant was not authorized to be driving the vehicle. Specifically, in response to that additional questioning, defendant told the officer that he was borrowing the SUV from "Doug," a name that the officer knew to be different from the name of the registered owner. Moreover, defendant provided the officer with a telephone number for Doug that went to an answering machine with a generic message. The officer testified that his continuing suspicion that defendant was not authorized to use the SUV contributed to his request that defendant step out of the car. And, that action led to additional discoveries that made the officer suspect the presence of marijuana in the SUV and, ultimately, to request consent to search.

The state, nevertheless, argues that defendant's consent to search was sufficiently attenuated from the unlawful conduct that we should affirm the trial court's denial of defendant's motion to suppress. The state's primary argument for why the officer did not exploit the unlawful extension is that, when the officer asked defendant to step out of the vehicle, he was "motivated chiefly by safety concerns rather than defendant's answers to the purportedly unlawful questions[.]" The state points to the officer's "concern that he could not see defendant's hands," and the fact that defendant was "unable to take his eyes off of [the officer]."

The state did not argue below that the motion to suppress should be denied, regardless of any purported unlawful extension, because the request to search was sufficiently attenuated from any such extension.[1] Moreover, the trial court did not address whether defendant's consent

---

[1] Although the Supreme Court decided *Unger* after the suppression hearing and trial in this case, "the burden has long been on the state to establish attenuation." *State v. Jones (A154424)*, 275 Or App 771, 776, 365 P3d 679 (2015).

to search was the product of police exploitation of a prior unlawful extension. Thus, we understand the state's argument to urge us to affirm the trial court ruling as right for the wrong reason.

In order to affirm a trial court's ruling on a basis other than which the court relied, "(1) 'the facts of record [must] be sufficient to support the alternative basis for affirmance'; (2) 'the trial court's ruling [must] be consistent with the view of the evidence under the alternative basis for affirmance'; and (3) 'the record [must] materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below.'" *State v. Booth*, 272 Or App 192, 199, 355 P3d 181 (2015) (quoting *Outdoor Media Dimensions, Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001)). Thus, "even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance." *Outdoor Media Dimensions, Inc.*, 331 Or at 660 (emphasis in original).

We conclude, as we did in *Booth*, that we cannot affirm the trial court on the alternative basis proposed by the state because "the trial court did not engage in the fact-specific inquiry necessary to determine whether the state had carried its burden of proving that 'the consent was independent of, or only tenuously related to, the unlawful police conduct[.]'" 272 Or App at 199 (quoting *Unger*, 356 Or at 86). In particular, the key premise of the state's attenuation argument is that the officer's decision to have defendant step out of the car was primarily unrelated to his suspicion that defendant was committing the crime of UUV— suspicion that was enhanced by the information that the officer obtained through the unlawful extension of the traffic stop. Yet, as indicated above, the officer testified that his suspicion that defendant was not authorized to use the SUV contributed to his decision to have defendant step out of the vehicle. Even if the trial court could have found that the contribution from the unlawful extension was only tenuous, the trial court did not engage in that necessary factual

inquiry. Thus, we cannot determine, for the first time on appeal, whether the state carried "its burden of proving that the consent was independent of, or only tenuously related to, the unlawful police conduct[.]" *See Booth*, 272 Or App at 199 (internal quotation marks omitted).

The state does not ask us to remand for further findings related to the suppression motion, and, in any event, we have previously declined to remand under similar circumstances. *See Jones*, 275 Or App at 776 (rejecting state's argument that case should be remanded based on fact *Unger* had not been decided at time of suppression hearing, because "the burden has long been on the state to establish attenuation" and the factors set forth in *Unger* "as pertinent to the attenuation analysis are not new"). Therefore, we conclude that the court erred in denying defendant's motion to suppress.

Reversed and remanded.