Argued and submitted June 15, 2021, reversed and remanded June 8, 2022

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

CHARLOTTE RANAE GLICKERT,
*Defendant-Appellant.*

Lincoln County Circuit Court
19CR20837; A171986

511 P3d 1124

Defendant seeks reversal of a judgment of conviction for one count of unlawful possession of methamphetamine (ORS 475.894(2)(a)). Defendant argues that the trial court erred in denying her motion to suppress all evidence obtained from her after she was unlawfully seized by the police in violation of Article I, section 9, of the Oregon Constitution. *Held*: The trial court erred by denying defendant's motion to suppress. The officers seized defendant when they waved her down, approached her from both sides of the car that she was driving, communicated to her that they knew who she was, that they were there to investigate illegal drug activity and that they had information that she was selling drugs. Under those circumstances and having unambiguously informed defendant that she was the subject of a criminal investigation, the officers had seized her within the meaning of Article I, section 9. A reasonable person would not have believed that they were free to leave.

Reversed and remanded.

Amanda R. Benjamin, Judge pro tempore.

David Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeVore, Senior Judge.*

MOONEY, P. J.

Reversed and remanded.

_____
* Pagán, J., *vice* DeHoog, J. pro tempore.

**MOONEY, P. J.**

In this criminal appeal, defendant seeks reversal of a judgment of conviction for one count of unlawful possession of methamphetamine, ORS 475.894(2)(a). Defendant assigns error to the trial court's denial of her motion to suppress. We agree with defendant that she was unlawfully seized by the police and, therefore, that the trial court erred in denying her motion to suppress. We reverse and remand.

We review "'for legal error whether a police officer's interaction with an individual amounts to an unlawful seizure under Article I, section 9.'" *State v. Kamph*, 297 Or App 687, 692, 442 P3d 1129 (2019) (quoting *State v. Sexton*, 278 Or App 1, 4, 378 P3d 83 (2016)). We necessarily also review the trial court's denial of defendant's motion to suppress for legal error, deferring to that court's factual findings to the extent that constitutionally sufficient evidence supports them. *State v. Brown*, 318 Or App 713, 715, 508 P3d 45 (2022).

The facts are undisputed. At least five or six officers from various law enforcement agencies parked their police vehicles at the bottom of a single-car driveway that led up a steep hill to a private home. The officers walked up the driveway toward the home to conduct a warrantless "knock-and-talk," planning to question the residents about drug activity. Some of the officers were wearing ballistic vests with the word "POLICE" on the front. Some officers were displaying badges and had visible guns. Partway up the driveway, at least two officers saw defendant's car leaving the residence, and one of those officers attempted to "wave" her down as she approached them on the driveway. Defendant did not immediately stop, but as she got nearer to them, they flanked her car with one officer on the driver side and one on the passenger side, at which point defendant stopped and rolled down her window. An officer approached defendant's window, asked if she was Charlotte Glickert, and stated that the police were there to investigate drug activity and that he had information that she was selling drugs. Defendant denied dealing drugs but admitted to being a drug user. The officer asked defendant about her

drug use and ultimately asked for her pipe, which defendant handed to him.

The issue on appeal is whether the police seized defendant. The relevant part of Article I, section 9, of the Oregon Constitution provides that:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

An otherwise "insignificant police encounter," which requires no justification, becomes a seizure for constitutional purposes, requiring some justification, when there is an "'imposition, either by physical force or through some "show of authority," of some restraint on the individual's liberty.'" *State v. Backstrand*, 354 Or 392, 399, 313 P3d 1084 (2013) (quoting *State v. Ashbaugh*, 349 Or 297, 309, 244 P3d 360 (2010)). The line separating mere police-citizen encounters from constitutional seizures is neither bright nor clear and, because of that, our inquiry is "fact-specific and requires an examination of the totality of the circumstances involved." *Id.* The test is objective: would a "reasonable person" believe, under the circumstances, that the officer is "exercising his or her official authority to restrain" and that the person is "not free to terminate the encounter or otherwise go about his or her ordinary affairs." *Id.* at 401. Defendant argues that this is "not a close case; this case is an unambiguous, quintessential stop by criminal accusation." The state argues, to the contrary, that "no reasonable person in defendant's position" would have perceived the officers words and conduct as a "show of authority" nor would such person have believed that she was not free to go about her own business. This was, according to the state, noncoercive conversation.

In *State v. Anderson*, 354 Or 440, 455, 313 P3d 1113 (2013), the Supreme Court concluded that a seizure had not occurred, holding that:

"officers did not seize the driver and defendant by walking up to the two in a parked car, inquiring into their connection to an apartment that they had just approached, and asking the two for their identifications. Those questions did not constitute a sufficient show of authority to cause a reasonable person under the circumstances to believe that

his or her liberty was significantly restrained and, there-fore, did not constitute a 'seizure.' The encounter rose to the level of a seizure only once the officers asked the driver and defendant to step out of the car."

In *State v. Reyes-Herrera*, 369 Or 54, 66-67, 500 P3d 1 (2021), the court concluded that a seizure had occurred where an officer suspected a possible drug transaction, asked the defendant specific questions about that suspicion (whether he had purchased drugs from a man who just walked away counting money and whether he had any drugs on him), and then asked for consent to search after the defendant answered "no" to both questions. As the court acknowledged, "variations in encounters between law enforcement and the public are many, and a slight difference in circumstances could make what was considered a nonrestrictive encounter in one case a stop in another." *Id.* at 67.

It is clear that when "an officer makes a direct and unambiguous accusation, the officer has conveyed that the citizen is not free to leave." *State v. Jackson*, 268 Or App 139, 149, 342 P3d 119 (2014). And a stop may occur "even when an officer does not accuse an individual of having com-mitted a crime." *Reyes-Herrera*, 369 Or at 62. The "critical question" that distinguishes "relaxed conversation" from "coercive questioning" is not whether the officer accuses the defendant of a crime or violation, it is whether, given all the circumstances, a reasonable person would believe that their freedom of movement was being significantly restricted. *Id.* at 61-62.

Here, defendant's encounter with the officers was a seizure for state constitutional purposes. An officer wear-ing a vest with the word "POLICE" on the front and dis-playing a badge, visibly armed and accompanied by at least five other officers, two of whom were in his immediate pres-ence and visible to defendant, flagged defendant down to speak with her and, when she did stop her vehicle to talk, the officers positioned themselves around the vehicle. The questioning officer first asked defendant if she was Glickert, communicating to her that he knew who she was, and then, after she confirmed her identity, told defendant that he was there to investigate suspected drug activity and that he

"had information that she was selling drugs." At that point of the encounter, a reasonable person would have believed that they were not free to leave. That is the point at which defendant was seized. The trial court erred in denying defendant's motion to suppress.

Reversed and remanded.