HADLOCK, J.
*79 *752 Defendant appeals a judgment of conviction for felon in possession of a firearm, ORS 166.270(1). Defendant executed a conditional no contest plea after the trial court denied his motion to suppress certain evidence that a law enforcement officer found after stopping the vehicle that defendant was driving for a traffic violation. On appeal, defendant contends that the trial court erred in denying the motion to suppress evidence because the officer discovered the evidence after unlawfully extending the traffic stop to question defendant about a different crime for which the officer lacked reasonable suspicion. The state argues that the officer's inquiry was reasonably related to the traffic stop itself and that, even if that line of questioning unlawfully extended the stop, we should affirm because the officer did not "exploit" the extension to obtain defendant's eventual consent to the search. We conclude that the officer unlawfully extended the stop and that the trial court erred in ruling otherwise. Moreover, we decline to affirm on the state's proffered "lack of exploitation" theory because the record could have developed differently had the state made that argument to the trial court. Accordingly, we reverse and remand.
"We review the denial of a suppression motion for legal error and are bound by the trial court's findings of historical facts, both implicit and explicit, if the record includes constitutionally sufficient evidence to support those findings." State v. Campbell , 289 Or.App. 442, 444, 410 P.3d 1041 (2017). We state the facts below pursuant to that standard.
While following defendant's vehicle, Myrtle Creek Police Officer Brewster noticed that the passenger-side brake light was out and stopped defendant. Brewster approached the vehicle and asked defendant for his driver's license, proof of insurance, and vehicle registration. Defendant did not have a driver's license and instead gave Brewster a Mexican identification card. He also provided a vehicle registration, which did not match the identification card. Defendant told Brewster that the vehicle belonged to his cousin, who loaned it to him to travel from Washington to California. Brewster did not promptly call defendant's information in to dispatch.
*80 Instead, he asked an extensive series of questions about defendant's cousin, including his name, where he lived, and how he was going to get his car back. Defendant answered the questions, although (as the trial court later found), "there was some backing up and sort of re-determining of sort of what the situation was supposed to be," perhaps because of some difficulties with interpretation. During that exchange, Brewster noticed that defendant's hands were shaking and his carotid artery was "pulsating, like pounding out, which told [Brewster] that his heart rate was very, very high to cause that." Brewster also noticed that the vehicle contained three cell phones, multiple energy drinks, and both women's and children's shoes. The combination of all those circumstances aroused Brewster's suspicion, apparently that defendant might be transporting "illegal products," but he testified that he did not have reasonable suspicion that defendant had committed a crime.
After engaging in that discussion about the car and defendant's cousin, Brewster asked defendant for his date of birth and then asked dispatch for a records check on defendant in Oregon, California, and Washington. While waiting for dispatch, Brewster asked defendant if he had any controlled substances, large amounts of "illegal currency," or weapons in the vehicle. Defendant notified Brewster that there was a weapon in the trunk. Brewster, having not observed the weapon, asked to search the vehicle, and defendant consented. Ultimately, Brewster found a handgun in the vehicle's trunk. He subsequently learned that defendant was a felon and he arrested defendant.
After defendant was charged, he moved to suppress the evidence found during the *753 search of his vehicle. At the suppression hearing, defendant argued that the questions regarding his cousin were asked outside of any unavoidable lull and therefore unlawfully extended the traffic stop, that Brewster lacked reasonable suspicion of a crime that would otherwise justify extension of the stop, and that defendant's later consent to search was involuntary. The state argued that the questions related to defendant's cousin were reasonably related to the stop because Brewster had an "obligation to investigate everything during that traffic stop," *81 including, under the circumstances, whether the vehicle that defendant was driving might have been stolen. Accordingly, the state argued, Brewster's questions did not unlawfully extend the stop. The state also argued that the search resulting in the discovery of the firearm was pursuant to defendant's voluntary consent. The state did not argue, however, that Brewster did not exploit any preceding unlawful extension of the stop to obtain defendant's consent to search.
The trial court denied the suppression motion on the grounds that the questions related to defendant's cousin were reasonably related to the stop and therefore did not unlawfully extend it, that the questions regarding the weapon were asked during a later unavoidable lull in the stop created after Brewster called defendant's information in to dispatch, and that Brewster had probable cause to search the vehicle for the weapon once dispatch confirmed the felony conviction. As noted, after the trial court denied defendant's suppression motion, he entered a conditional no contest plea and was convicted of felon in possession of a firearm.
On appeal, defendant argues that the trial court erred in denying the suppression motion because Brewster unlawfully extended the traffic stop when he began questioning defendant about the car's ownership instead of citing defendant for the traffic violation or investigating the offense of failure to carry or present a license. Defendant asserts that the extension of the stop violated his rights under Article I, section 9, of the Oregon Constitution because Brewster's questions "were not reasonably related to the traffic stop or justified by reasonable suspicion of a crime." Anticipating a possible "reasonable suspicion" argument from the state, defendant also argues that defendant's nervous demeanor, his lack of a driver's license, and the fact that the vehicle was registered to another person, either individually or combined, are not enough to support reasonable suspicion "of a crime other than failure to carry and present a driver's license." Further, defendant argues that we should not consider whether defendant's eventual consent to search attenuated the effect of what he contends was Brewster's earlier unlawful extension of the stop because the state did not argue "lack of exploitation" below; if we do consider that *82 argument, defendant contends, we should conclude that the state did not prove "that defendant's consent was not the product of illegal extension of the stop."
For its part, the state does not attempt to justify any extension of the stop on a theory that Brewster had reasonable suspicion of a crime.[1] Instead, the state cites State v. Watson , 353 Or. 768, 305 P.3d 94 (2013), arguing that "an officer is free to ask, during a lawful traffic stop, questions that are reasonably related to the traffic violation." According to the state, Brewster's questions about defendant's cousin were permissible because, in the circumstances, "additional inquiry about the cousin, and about how he planned to get the car back, was reasonably related to the traffic stop." The state suggests that Brewster's questions regarding the cousin were an attempt to ensure that, if defendant were to drive away, he would be doing so in a vehicle that he was authorized to use. The state contends that such an inquiry is analogous to *754 determining whether a person is licensed to continue on his way after a detention for a traffic violation, which is questioning that the Supreme Court has authorized. Watson , 353 Or. at 782, 305 P.3d 94. Accordingly, the state concludes, Brewster's questions did not unlawfully extend the traffic stop. Alternatively, the state argues that, even if Brewster's questioning regarding defendant's cousin did unlawfully extend the stop, the "right for the wrong reason" doctrine allows us to affirm on the ground that Brewster "did not exploit the questions about defendant's cousin to obtain defendant's consent to a search."
We pause to emphasize what is not at issue on appeal. First, defendant does not challenge the original traffic stop's lawfulness. Second, defendant does not dispute that Brewster lawfully could have questioned defendant while *83 waiting for dispatch had he immediately obtained defendant's information and called it in. Third-presumably because the trial court expressly found that Brewster questioned defendant about his cousin before calling defendant's information in to dispatch-the state does not dispute that those questions extended the stop as a temporal matter. Fourth, as noted earlier, the state does not attempt to justify the temporal extension of the stop on the ground that Brewster reasonably suspected defendant of a crime.
Thus, both parties' arguments start from a premise that necessarily follows from the trial court's findings-that Brewster's questions about defendant's cousin temporally extended the stop. Defendant argues that the temporal extension was unlawful because Brewster's questions about defendant's cousin were not reasonably related to the stop and were not justified by reasonable suspicion of a crime. The state argues that Brewster's questions were reasonably related to the stop-and therefore did not unlawfully extend it-because they ensured that if defendant drove away he would do so in a vehicle he was authorized to use.
We agree with defendant. The state's contrary argument is defeated by our decision in State v. Dawson , 282 Or.App. 335, 386 P.3d 165 (2016), which involved facts and arguments similar to those here. In Dawson , an officer stopped the defendant for driving a vehicle with no front license plate. Id. at 336, 386 P.3d 165. The defendant told the officer that the vehicle belonged to a friend and, based on other circumstances, the officer suspected that the defendant was using the vehicle without authorization. After running the license plate and learning the name of the registered owner and that the vehicle had not been reported stolen, the officer ran the defendant's name through various databases and continued to ask the defendant questions about his connection to the vehicle's registered owner. The defendant gave the officer a name and phone number for the friend from whom he claimed to be borrowing the vehicle; the name was not that of the registered owner and the phone number went to a generic voicemail. The officer remained suspicious, ran a "wanted person inquiry" on both the defendant and a passenger, and had the defendant step out of the car.
*84 Id. at 337, 386 P.3d 165. When the defendant stepped out of the car, the officer smelled marijuana. The defendant consented to a search, which revealed both cocaine and a large amount of cash. Id. at 338, 386 P.3d 165.
On those facts, we first determined that "the officer extended the duration of the traffic stop to investigate a matter beyond whether defendant had valid driving privileges." Id. at 341, 386 P.3d 165. We specifically held that an investigation into whether the defendant had committed the crime of unauthorized use of a vehicle (UUV) was "unrelated to the purpose of the traffic stop" and, therefore, could not justify any detention " 'as an alternative to going forward with the next step in processing the infraction such as the writing or issuing [of] a citation.' " Id. at 340-41, 386 P.3d 165 (quoting State v. Dennis , 250 Or.App. 732, 734, 282 P.3d 955 (2012) ). Having also concluded that the extension of the stop was not justified by reasonable suspicion, we reversed. Id. at 341-47, 386 P.3d 165.
The holding in Dawson follows from principles fundamental to the Article I, section 9, analysis. Police officers gain authority to perform a traffic stop from the *755 facts that create "probable cause to believe that there has been unlawful, noncriminal activity, viz. , a traffic infraction." State v. Rodgers/Kirkeby , 347 Or. 610, 623, 227 P.3d 695 (2010). Article I, section 9, is not further implicated during a noncriminal traffic stop if the detention remains limited and the police conduct remains reasonably related to the noncriminal traffic violation. Id . at 624, 227 P.3d 695. More concretely, police lose detention authority during a traffic stop "when the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation (if any) is completed or reasonably should be completed." Id. at 623, 227 P.3d 695.
In Watson , the Supreme Court elaborated on those principles, explaining that certain inquiries or activities-there, an officer's "determination of whether the [stopped] driver has valid driving privileges"-are reasonably related to traffic stops and therefore do not unconstitutionally extend them. 353 Or. at 782, 305 P.3d 94. That is because it is reasonable for an officer to determine whether the driver will be able to lawfully continue driving after the stop ends. Id. The court *85 distinguished that kind of permissible inquiry, which is specifically "related to the investigation of the traffic infraction" that led to the stop, from inquiries into other matters. Id. at 783, 305 P.3d 94.
In this case, Brewster's inquiry about defendant's cousin did not relate to the investigation of the brake-light violation. Nor did it relate to whether Brewster had valid driving privileges. Rather, Brewster's questions related to determining whether defendant was engaged in criminal activity, possibly UUV, as the state argued at the suppression hearing, or transporting "illegal products," as Brewster testified. Those questions do not "reasonably relate" to the traffic stop merely because they can, theoretically, be described in ways that implicate whether defendant would be committing a crime if he drove away once the traffic stop ended. That is, the fact that a stopped driver might commit UUV if he drove away in a stolen car, or might commit a drug-trafficking crime if he drove away with drugs in his vehicle, does not give an officer justification for extending a traffic stop to investigate those possible crimes absent reasonable suspicion that the crimes have occurred or are about to occur.
In sum, Brewster's questions about defendant's cousin were not reasonably related to the traffic stop and they temporally extended the duration of that stop. The state has not identified any other justification for extending the stop, such as reasonable suspicion of a crime. Accordingly, those questions impermissibly extended the stop in violation of Article I, section 9.
Still, the state argues that we should affirm using the "right for the wrong reason" doctrine because no causal link exists between Brewster's unlawful inquiry and defendant's eventual consent to search, which resulted in Brewster discovering the weapon in the trunk of the vehicle. That is, the state contends that Brewster did not exploit any preceding illegality in obtaining defendant's consent to search.
The state's argument implicates principles that the Supreme Court explored in State v. Unger , 356 Or. 59, 333 P.3d 1009 (2014). There, the court emphasized that, when a defendant challenges the validity of his consent following *86 an established unlawful stop or search, "the state bears the burden of demonstrating that (1) the consent was voluntary; and (2) the voluntary consent was not the product of police exploitation of the illegal stop or search." Id. at 75, 333 P.3d 1009. On the latter point, the state must demonstrate that "the consent is unrelated or only tenuously related to the prior illegal police conduct." Id. at 79, 333 P.3d 1009. A court analyzing such a "lack of exploitation" argument must consider the totality of the circumstances, including the nature of the illegal stop or search, whether the stop was "intrusive, extended, or severe," the "purpose and flagrancy" of the misconduct, whether an officer "traded on" information gained as a result of the misconduct to obtain consent to search, the temporal proximity between the police misconduct and the consent, and the presence or absence of intervening and mitigating circumstances. Id. at 80-81, 333 P.3d 1009.
Given the fact-intensive nature of the lack of exploitation inquiry, we have frequently *756 declined the state's invitation to affirm denial of a suppression motion on that alternative basis when the state did not argue lack of exploitation below. See, e.g. , State v. Decker , 290 Or.App. 321, 333-34, 417 P.3d 449 (2018) (declining to affirm on lack of exploitation argument not made below); Dawson , 282 Or.App. at 346-47, 386 P.3d 165 (same); State v. Mullens , 276 Or.App. 217, 219, 366 P.3d 798 (2016) (same); State v. Fowler , 273 Or.App. 20, 25, 359 P.3d 276 (2015) (same); State v. Booth , 272 Or.App. 192, 199-200, 355 P.3d 181 (2015) (same). In some cases, we have declined to address the new lack of exploitation argument because we concluded that the record might have developed differently had the state made that argument in response to the suppression motion. E.g. , Mullens , 276 Or.App. at 219, 366 P.3d 798 ("[W]e will not consider the state's lack-of-exploitation argument as an alternative basis for affirmance where that argument was not made below and the record may have developed differently had it been raised."). We have also explained that we will decline to affirm on that alternative basis when the trial court "did not engage in the fact-specific inquiry necessary to determine whether the state had carried its burden of proving" lack of exploitation. Booth , 272 Or.App. at 199, 355 P.3d 181.
The state contends that this case is different because, although the state did not make a lack of exploitation *87 argument below, defendant himself brought that issue to the trial court's attention. True, in defendant's written suppression motion and at the hearing on that motion, he briefly asserted that, even if his consent was voluntary, it was the product of the preceding unlawful extension of the traffic stop. But, at least in this case, what defendant argued accomplished nothing more than succinctly outlining the legal principles related to his suppression motion. A defendant's accurate statement of the law cannot substitute for the state's development of the kind of fact-based record and argument needed to meet its burden of demonstrating that an officer did not obtain a defendant's consent to search by exploiting a prior illegality. And in this case, as defendant argues, the record might have developed differently had the state made that argument below. For example, had the state argued the point, defendant could have elicited testimony on the effect that Brewster's inquiries had on defendant's decision to give Brewster consent to search. Moreover, the parties might have made a record regarding whether Brewster's request for consent to search was prompted by his exchange with defendant about defendant's cousin and might not have happened otherwise. Both because the record might have developed differently and because the trial court was not given any reason to make findings on the factors that inform the "lack of exploitation" analysis, we will not affirm on that alternative basis. And, because defendant's conviction is based on a conditional guilty plea, we do not engage in a harmless-error analysis. State v. Parnell , 278 Or.App. 260, 270 n. 4, 373 P.3d 1252 (2016).
Reversed and remanded.

Notably, the trial court did not base its denial of the suppression motion on a determination that Brewster reasonably suspected defendant of a crime. Moreover, as noted above, Brewster himself testified during the suppression hearing that the observations he made of defendant and the items in his vehicle did not give him reasonable suspicion of a crime. Accordingly, we do not address the reasonable suspicion point further. See generally State v. Blackstone , 289 Or.App. 421, 431-32, 410 P.3d 354 (2017) (reasonable suspicion "includes both a subjective and an objective component" and, therefore, "the officer must subjectively believe that the person has committed or is about to commit a specific crime or type of crime").