FLYNN, J.
**376 The issue in this criminal case is whether a law enforcement officer, who was lawfully investigating whether defendant had been driving under the influence of intoxicants (DUII), unlawfully extended the investigatory stop by asking if defendant was carrying a firearm. In response to that question, defendant disclosed that he was carrying a knife, which led to his conviction for carrying a concealed weapon, ORS 166.240(1). Defendant contends that the officer's question unlawfully extended the stop because, the officer lacked an objectively reasonable, circumstance-specific perception that defendant posed a danger, as required by Article I, section 9, of the Oregon Constitution. See State v. Jimenez , 357 Or. 417, 353 P.3d 1227 (2015) (describing standard). The Court of Appeals agreed with defendant and reversed his conviction, emphasizing that nothing about defendant's conduct during the encounter gave the officer a reason to be concerned for his safety.
We allowed the state's petition for review of that decision and now reverse. We held in Jimenez that the constitutional standard for an officer to ask a lawfully detained citizen about weapons is less demanding than the particularized reasonable suspicion that Article I, section 9, requires before the officer may search the citizen for weapons. 357 Or. at 427-28, 353 P.3d 1227. Article I, section 9, does not prohibit law enforcement officers from asking about the presence of weapons during a lawful stop if (1) "the officer perceived a circumstance-specific danger and decided that an inquiry about weapons was necessary to address that danger;" and (2) "the officer's perception and decision were objectively reasonable." Id. at 430, 353 P.3d 1227. We conclude that the officer in this case perceived a circumstance-specific of danger, within the meaning of Jimenez , based on his explanation of the risk of performing late-night field sobriety tests on a person whom the officer reasonably suspected *244 was intoxicated. We also conclude that the state met its burden to prove that the officer's perception of danger and decision that a question about firearms was necessary were objectively reasonable. **377 I. FACTUAL AND PROCEDURAL BACKGROUND
In reviewing the trial court's denial of defendant's motion to suppress, we are bound by the court's findings of historical fact if the evidence in the record supports them. State v. Holdorf , 355 Or. 812, 814, 333 P.3d 982 (2014). To the extent that the trial court failed to make express findings on pertinent historical facts, we will presume that the trial court found those facts in a manner consistent with its ultimate conclusion. Id. In this case, the pertinent historical and procedural facts are undisputed, except as indicated.
While defendant was driving late one night, a law enforcement officer[1] saw defendant's car hesitate before proceeding on a green light and then pull off to the side of the road. The officer pulled his marked patrol car in behind defendant's car and asked if defendant needed assistance. Based on his initial encounter with defendant, the officer developed reasonable suspicion that defendant had committed the crime of DUII. The officer asked defendant for his identification and returned to his own car to conduct a records check.
The officer walked back to defendant and asked if he had a firearm with him.[2] In response, defendant indicated that he "had a knife on his boot, or leg." The officer removed two knives from defendant's boot. The officer then administered field sobriety tests to defendant. He ultimately determined that defendant was not intoxicated but cited defendant for carrying a concealed weapon in violation of ORS 166.240(1).[3]
**378 Defendant moved to suppress the evidence that the officer had obtained as a result of his question about weapons. Defendant argued to the trial court that the officer's question had unlawfully extended the stop because the officer did not possess a "reasonable suspicion, based upon specific and articulable facts," that defendant posed an "immediate threat of serious physical injury." In support of that argument, defendant elicited testimony from the officer that nothing about defendant's conduct during the encounter had caused the officer to be concerned for his safety:
"[Defense Counsel:] So he had done absolutely nothing to give you concern that he might attack you at this point, had he?
"[Officer:] No, sir.
"[Defense Counsel:] In fact, he was being civil and cooperative with you, wasn't he?
"[Officer:] Yes, sir.
"[Defense Counsel:] Not threatening or angry, combative in any way?
"[Officer:] That is correct."
The trial court concluded that the officer had asked a reasonable question "from the standpoint of officer safety" and denied defendant's motion. Defendant entered a conditional guilty plea to carrying a concealed weapon, but reserving his right to appeal the trial court's denial of his motion to suppress. See ORS 135.335(3) (providing that a defendant may reserve the right to appeal from a conditional plea of guilty or no contest).
While the case was pending before the Court of Appeals, this court decided Jimenez , 357 Or. 417, 353 P.3d 1227. Applying the standard articulated in Jimenez , the Court of Appeals concluded that the officer had lacked *245 a reasonable circumstance-specific concern that defendant posed a danger and, accordingly, reversed and remanded the judgment of conviction. That court primarily relied on the evidence that nothing about defendant's conduct during the stop had contributed to a perception of danger. State v. Miller , 277 Or. App. 147, 154-55, 370 P.3d 882 (2016). **379 II. DISCUSSION
We allowed the state's petition for review to consider whether the state proved that the officer perceived an objectively reasonable, circumstance-specific danger that justified the weapons inquiry, despite his acknowledgment that defendant's conduct during the stop was not threatening. Before addressing the parties' arguments, we begin with some general-but critical-constitutional context.
A. Overview of Pertinent Constitutional Principles
Article I, section 9, of the Oregon Constitution establishes a right of the people to be "secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." For purposes of evaluating whether an encounter with law enforcement implicates an individual's rights under Article I, section 9, this court has identified three general categories of encounter: encounters that involve "mere conversation," which are not considered a "seizure" for purposes of Article I, section 9 ; " 'stops,' " which involve "a temporary restraint on a person's liberty"; and " 'arrests'[,] which are restraints on an individual's liberty that are steps toward charging individuals with a crime[.]" State v. Ashbaugh , 349 Or. 297, 308-09, 244 P.3d 360 (2010) (quoting State v. Rodgers/Kirkeby , 347 Or. 610, 621-22, 227 P.3d 695 (2010) ). An officer may stop a person to investigate a crime, without violating Article I, section 9, if the officer has "reasonable suspicion" that the person has committed or is about to commit a crime. Holdorf , 355 Or. at 823, 333 P.3d 982.
There is no dispute that, at the time when the officer asked about the presence of firearms, the encounter between defendant and the officer was a "stop" for purposes of the Article I, section 9, analysis, and there is no dispute that the officer possessed the reasonable suspicion necessary to justify the stop for purposes of investigating whether defendant had committed the crime of DUII. That reasonable suspicion to justify the investigatory stop, however, also defined the constitutionally permissible boundaries of the stop. See , e.g. , State v. Watson , 353 Or. 768, 781, 305 P.3d 94 (2013) (explaining that Article I, section 9, requires that, when law enforcement officers have a justification for **380 stopping a person to conduct an investigation, the officer's activities must "be reasonably related to that investigation and reasonably necessary to effectuate it").
As we emphasized in Jimenez , "when an officer has seized an individual and has a constitutional basis to continue to temporarily detain and question him or her," the officer may ask questions that are "reasonably related to and reasonably necessary to effectuate" the officer's investigation. Jimenez , 357 Or. at 429, 353 P.3d 1227. However, when the officer asks a question that is not reasonably related to the reason for the stop, the question extends the stop, and Article I, section 9, requires that there be an independent basis to justify the extension. State v. Pichardo , 360 Or. 754, 762, 388 P.3d 320 (2017).[4]
B. Jimenez's Standard for Determining Whether a Question About Weapons is Reasonably Related to the Reason for the Stop
In Jimenez , a state trooper stopped the defendant after noticing the defendant cross the street against a "Don't Walk" sign, engaged the defendant in a brief conversation about why he crossed against the light, *246 and then asked if the defendant had any weapons on him. 357 Or. at 419-20, 353 P.3d 1227. The key issue that this court addressed in Jimenez was how to determine if the trooper's question about weapons unlawfully extended the stop. We concluded that the test for whether a question about weapons falls within the constitutionally permissible scope of the stop should be the same as the test for questions, generally: "[W]hen an officer has seized an individual and has a constitutional basis to continue to temporarily detain and question him or her," the officer may ask questions that are "reasonably related to and reasonably necessary to effectuate" the officer's investigation. Jimenez , 357 Or. at 429, 353 P.3d 1227. For the state to prove that a question about weapons meets that test, the state must "present evidence **381 that (1) the officer perceived a circumstance-specific danger and decided that an inquiry about weapons was necessary to address that danger; and (2) the officer's perception and decision were objectively reasonable." Id . at 430, 353 P.3d 1227.
In arriving at that conclusion, this court rejected the state's proposed categorical rule that an "officer always may inquire about weapons" because "a weapons inquiry invariably serves to protect officer safety." Id. at 424, 426 n. 10, 353 P.3d 1227. We emphasized that, "if the officer does not have at least a circumstance-specific safety concern, then the officer's weapons inquiry has no logical relationship to the traffic investigation." Id. at 429, 353 P.3d 1227. Moreover, we emphasized, "if the officer's circumstance-specific safety concerns are not reasonable, then an officer who acts on those concerns violates" the detained person's Article I, section 9, right to be free from an " 'unreasonable search, or seizure.' " Id.
C. Applying the Jimenez Standard to Resolve this Case
Although Jimenez addressed the constitutional limits on an officer's authority to ask a question during the course of a noncriminal stop, we have held that the same general standard governs the scope of questioning that is permitted during a stop that is based on reasonable suspicion to investigate a crime, as was the stop here: "[T]he state must be able to point to a 'reasonable, circumstance-specific' relationship between the inquiry and the purpose of the detention." Pichardo , 360 Or. at 760, 388 P.3d 320. Thus, there is no dispute that Jimenez supplies the standard by which this court must evaluate whether the officer's question about weapons had a "reasonable, circumstance-specific" relationship to the DUII stop.
The parties disagree, however, regarding how to apply the Jimenez standard to the circumstances of this case. As evidence that the officer "perceived a circumstance-specific danger," the state points to his testimony that "[t]here is absolutely nothing safe about administering field sobriety tests on the side of the road at 12:30 in the morning"; that, in performing field sobriety tests, "it's inevitable" that he is "going to put [himself] in a compromising situation"; that it is "police work 101" that he would not allow a **382 DUII suspect "to have a handgun on his person" during the investigation; and that he decided to ask about the gun for his own safety.
Defendant emphasizes, however, that the officer admitted that defendant had been civil and cooperative when stopped, and had done nothing during the stop to give the officer reason to believe that defendant presented a threat. Although defendant does not concede that the officer subjectively perceived a danger based on the identified circumstances, the officer's testimony and actions permit a finding that he subjectively held that perception, and we presume that the trial court found that the officer subjectively had suspected that defendant posed a danger because that finding was necessary to the court's ruling on the motion to suppress. See Holdorf , 355 Or. at 814, 333 P.3d 982. Thus, we evaluate defendant's arguments as a challenge to the sufficiency of the circumstances that gave rise to the officer's perception of danger. According to defendant, the circumstances that the officer identified as contributing to his perception of danger are so generic as to essentially invite a categorical rule that Article I, section 9, permits a weapons inquiry during any night-time DUII stop, a rule that defendant considers to be contrary to this court's decision in Jimenez.
*247 The Court of Appeals agreed with defendant that the state failed to demonstrate that the officer's weapons inquiry "was reasonably related to the stop and reasonably necessary to effectuate it" as required by Jimenez . Miller , 277 Or. App. at 154, 370 P.3d 882. Like defendant, the Court of Appeals highlighted, "most importantly," the officer's testimony that nothing about defendant's conduct during the stop contributed to a perception that he posed a danger to the officer. Id. The court also emphasized that "nothing about defendant's past conduct indicated that he posed a danger to the officer." Id. at 155, 370 P.3d 882. Finally, the court concluded that the state had failed to prove that the "setting of the stop" provided an objectively reasonable basis for the officer to perceive that defendant presented a danger because the location of the stop was not in a high-crime area and, despite the hour, the location was illuminated by several light sources and "there was consistent traffic" along the street. Id. at 156, 370 P.3d 882.
**383 The nature of the parties' dispute presents two issues that Jimenez did not fully address: (1) whether an officer's circumstance-specific perception of danger can be based entirely on circumstances that are not particular to the detained person; and (2) what a reviewing court considers to determine whether the state has proved that the officer's perception and decision were objectively reasonable.
1. The meaning of "Circumstance-Specific Safety Concerns"
We conclude that the state can meet its burden to prove that an officer possessed a circumstance-specific perception of danger, within the meaning of Jimenez , even if the circumstances that the officer identifies could be expected to exist for most individuals detained under similar circumstances. An officer's inquiry about weapons may be reasonably related to the stop of the defendant if the officer perceives a danger based on the "totality of the circumstances that the officer faces." Jimenez , 357 Or. at 429, 353 P.3d 1227.
In Jimenez , this court specifically rejected the defendant's proposal that a question about weapons must be justified by the particularized "reasonable suspicion" that is necessary before an officer may conduct a lawful patdown search of the detained individual. As this court explained, for the state to prove that an officer had "an independent, lawful justification to conduct a warrantless search for weapons," the officer must develop " 'a reasonable suspicion based upon specific and articulable facts, that [the citizen] might pose an immediate threat of serious physical injury to the officer or to others then present.' " Id. at 423, 353 P.3d 1227 (quoting State v. Bates , 304 Or. 519, 524, 747 P.2d 991 (1987) ). In that situation, the officer's reasonable suspicion "must be particularized to the individual based on the individual's own conduct." State v. Miglavs , 337 Or. 1, 12, 90 P.3d 607 (2004).
In contrast, for a "circumstance-specific" perception of danger justifying a weapons inquiry, "the officer's safety concerns need not arise from facts particular to the detained individual; they can arise from the totality of the circumstances that the officer faces." Jimenez , 357 Or. at 429, 353 P.3d 1227. Thus, although this court agreed with the defendant in Jimenez that "the circumstances were not sufficiently particularized **384 to justify" an officer-safety search under the standard set out in Bates, the court proceeded to consider whether the question about weapons might, nevertheless, have been within the scope of the stop because it was "reasonably related to and reasonably necessary to effectuate his traffic investigation." See id . at 427-28, 353 P.3d 1227.
Although defendant acknowledges that a question about weapons may be reasonably related to an investigatory stop under circumstances that would not justify a search for weapons, he nevertheless contends that Jimenez requires the state to establish that some circumstance specific to the detainee contributed to the officer's perception of danger. Otherwise, he argues, the test becomes the kind of per se rule that this court rejected in Jimenez . Defendant emphasizes that, in Jimenez, this court specifically rejected the state's proposal of a "per se " rule that, "regardless of whether an officer reasonably perceives an articulable danger, the officer *248 always may inquire about weapons because '[t]he inherent dangers to an officer in a traffic stop are undeniable.' " 357 Or. at 424, 426, 353 P.3d 1227. In the absence of any evidence regarding the circumstances that caused the officer to ask about weapons, the state sought to justify the question by relying on general statistics-offered only on appeal-about the hazards of police-citizen encounters. Id. at 425-26, 353 P.3d 1227. In rejecting the state's proposal that a weapons inquiry invariably serves to protect officer safety, this court explained that, "[w]hen an officer does not reasonably perceive a danger, we will not presume that such danger nevertheless exists or that the officer's inquiry about weapons would address such danger." Id. at 426, 353 P.3d 1227.
We disagree with defendant's premise that an officer's perception of danger that is based on risks that may be generally present in late-night DUII stops is equivalent to the per se danger that the state urged this court to recognize in Jimenez . The obstacle for the state in Jimenez was that the state failed to prove that the officer perceived any circumstance-specific danger at all. Although the state argued that various circumstances could have given rise to a perception of danger, we emphasized that the officer did not identify any of those circumstances as giving rise to a **385 perception of danger. Rather, the officer testified that he had asked about weapons because " '[i]t makes [it] a lot easier if we can stand and have a normal conversation if there's no weapons on the person,' " and he did not explain why circumstances of the encounter gave rise to a safety concern. Id. at 430-31, 353 P.3d 1227. The state also failed to prove that the officer's weapons inquiry had been related to any perceived danger. Rather, the record showed that the officer had conversed with the defendant long enough to get the information that would be needed for a citation before asking about weapons. Id . at 430, 353 P.3d 1227. As the concurrence in Jimenez highlights, "not only did the officer not explain why the circumstances of this stop concerned him, but he explained that he always asks about weapons in every pedestrian stop without regard to the circumstances of the stop." Id . at 435, 353 P.3d 1227 (Kistler, J. concurring).
Unlike the officer in Jimenez , the officer here explained why the circumstances of this stop had caused him to have concern for his safety. As an initial matter, we emphasize that there is no dispute that circumstances specific to defendant gave the officer reasonable suspicion that defendant had been driving while intoxicated. In contrast to Jimenez , the officer explained that he was concerned for his safety because of the nature of the ongoing interaction needed to investigate whether defendant had committed the crime of DUII. He testified that there is "absolutely nothing safe about administering field sobriety tests on the side of the road at 12:30 in the morning" and that, in performing field sobriety tests, it was "inevitable" that he was going to be placing himself "in a compromising situation." He also specifically testified to a concern that defendant could be carrying a gun and that it is "police work 101" that an officer not allow a DUII suspect "to have a handgun on his person" during field sobriety tests. His testimony permitted the trial court to find that the officer perceived a danger based on circumstances specific to this stop and also perceived that it was necessary to ask about weapons to address that danger.
The officer's actions also support a finding that he asked his question about a firearm to address his circumstance-specific perception of danger. By asking whether defendant had a firearm before conducting the field sobriety tests, the **386 officer's actions connected his weapons inquiry to his articulated perception of danger in a way that the actions of the officer in Jimenez did not. Thus, the evidence permitted the trial court to find that the officer here had perceived a danger based on circumstances specific to the stop of defendant and also to find that he had decided that a question about weapons was necessary to address the perceived danger, which in turn permits this court to evaluate whether those perceptions were objectively reasonable.
2. State's burden to prove objectively reasonable perception
The parties also dispute whether the state proved that the officer's perception of danger was objectively reasonable. As *249 Jimenez explains, "[t]o demonstrate that an officer's weapons inquiry is reasonably related to a traffic investigation and reasonably necessary to effectuate it, the state must present evidence that * * * the officer's perception and decision were objectively reasonable." 357 Or. at 430, 353 P.3d 1227. Thus, objective reasonableness is an independent component of the state's burden of proof, and it presents a question of law that requires an independent assessment by the court. See Pichardo, 360 Or. at 762, 388 P.3d 320 (although the state identified circumstances specific to the stop that, it contended, led the officer to request consent, this court concluded that the connection that the state identified between those circumstances and the question was too tenuous to establish that the request "reasonably related" to the stop).
Focusing on the evidence that the state presented in the trial court, we conclude that the officer's circumstance-specific perception of danger was objectively reasonable. Of those circumstances that the officer identified, we consider the nature of the stop to be particularly significant. We have emphasized that the nature of an investigation can affect the range of questions that will be reasonably related to the investigation. See Pichardo , 360 Or. at 760, 388 P.3d 320 (explaining that a stop to investigate whether criminal activity has occurred or is occurring "can entail a broader range of questions than an investigation to determine whether a defendant has committed a traffic violation"). Here, the officer reasonably suspected that defendant was intoxicated and had been driving while intoxicated. If those suspicions were confirmed, as the **387 dissenting opinion in the Court of Appeals emphasizes, "it would mean that defendant was impaired and already had exhibited poor judgment by deciding to drive in an intoxicated state." Miller ,277 Or. App. at 163, 370 P.3d 882 (Hadlock, J., dissenting); see also State v. Montieth , 247 Or. 43, 49, 417 P.2d 1012 (1966), cert. den. , 386 U.S. 780, 87 S.Ct. 1496, 18 L.Ed. 2d 526 (1967) (explaining that the "obvious purpose" of drunk driving statutes is to "keep off the highways those drivers whose judgment, vision, reflexes, and ability to see and react have been impaired by drink").
Also particularly significant is the officer's expertise with regard to the risk of danger that might be presented if an intoxicated suspect were to have a firearm on his person when an officer conducted the field sobriety tests. The officer testified that he has significant training in the investigation of suspected DUII offenses, including training to become certified to instruct law enforcement officers throughout the state on field sobriety testing. In the context of evaluating whether an officer possesses "reasonable suspicion" that a citizen "might pose an immediate threat" to justify a search for weapons, we have emphasized that an officer's training and experience can be a significant consideration. See Miglavs , 337 Or. at 13, 90 P.3d 607 (explaining that "officers reasonably may draw inferences about human behavior from their training and experience"); see also Holdorf , 355 Or. at 827-28, 333 P.3d 982 (in the context of "reasonable suspicion" of a crime, explaining that, "[f]rom its inception, the 'reasonable suspicion' standard has included a proper regard for the experience that police officers bring with them when they encounter criminal suspects").
Consideration for an officer's training and experience is at least as appropriate when evaluating whether an officer reasonably perceived a danger and related need to ask about weapons as when evaluating whether an officer had reasonable suspicion to justify a search for weapons. The trial court was permitted to credit the officer's explanation, based on his experience and training, that performing the field sobriety tests would put him "in a compromising situation"; that, in addition, "[t]here is absolutely nothing safe about administering field sobriety tests on the side of **388 the road at 12:30 in the morning"; and that, to address that risk, he needed to know if defendant was carrying a weapon. The officer identified a specific basis to believe that defendant might be carrying a gun, and he testified that it is "police work 101" that an officer not allow a DUII suspect "to have a handgun on his person" during the field sobriety tests.
Although such testimony does not make a question about weapons categorically *250 reasonable, if an officer credibly testifies about an assessment of risk that is based on training and experience, it is appropriate for the court to consider that assessment. Indeed, here, no evidence in the record calls into question the officer's description of the risk to which he would be exposed while performing field sobriety tests late at night if the suspect were intoxicated and carrying a firearm during the tests. On this record, therefore, we conclude that the state met its burden to prove that the officer reasonably perceived a circumstance-specific danger and also reasonably decided that a question about firearms was necessary to address that danger. That perception and decision were not made unreasonable by evidence that defendant displayed a peaceful demeanor, that other cars were driving by, and that light sources illuminated the scene.
We emphasize that it is undisputed that the officer had a constitutional basis to seize and continue to detain defendant. The issue we resolve is whether the officer's single question about a firearm unlawfully extended the stop. Unlike conducting a search for weapons during a lawful stop, which must be justified by reasonable suspicion that the citizen "might pose an immediate threat of serious physical injury" and must be based on factors particular to the detained person, asking a question that is reasonably related to and reasonably necessary to effectuate a lawful investigative stop requires no independent constitutional basis and no circumstances particular to the detained person. Jimenez , 357 Or. at 428-29, 353 P.3d 1227. As we have emphasized, the "reasonable relationship" test of Jimenez is "not a demanding one." Pichardo , 360 Or. at 762, 388 P.3d 320. On this record, we accept the trial court's implicit finding that the officer subjectively perceived a danger from the circumstances attendant to a **389 roadside DUII investigation and decided that an inquiry about weapons was necessary to address that danger. We also conclude that the officer's question was reasonably related to and reasonably necessary to effectuate his DUII investigation because we conclude that he "perceived a circumstance-specific danger" that necessitated the question about weapons and that his "perception and decision [to ask about weapons] were objectively reasonable." Jimenez , 357 Or. at 430, 353 P.3d 1227.
The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

The law enforcement officer in this case was a Sheriff's Deputy. For ease of reference, we refer to the deputy as an "officer" in this opinion.

During the background check, the officer learned that defendant was licensed to carry a concealed handgun. As we will explain in greater detail later in the opinion, that circumstance plays no role in our legal analysis.

ORS 166.240(1) provides:
"Except as provided in subsection (2) of this section, any person who carries concealed upon the person any knife having a blade that projects or swings into position by force of a spring or by centrifugal force, any dirk, dagger, ice pick, slingshot, metal knuckles, or any similar instrument by the use of which injury could be inflicted upon the person or property of any other person, commits a Class B misdemeanor."

Although an officer's verbal inquiries "are not searches and seizures and thus by themselves ordinarily do not implicate Article I, section 9," when a person is already stopped, the person "is not free unilaterally to end the encounter and leave whenever he or she chooses," so questions that are not reasonably related to the purpose of the stop extend the stop in a way that requires some independent justification under Article I, section 9. Rodgers/Kirkeby , 347 Or. at 622-63, 227 P.3d 695.