AOYAGI, J., *770 Defendant was stopped for a traffic violation while bicycling. During the stop, the officer began investigating defendant for driving under the influence of intoxicants (DUII), specifically marijuana. The officer asked defendant a series of questions, which ultimately led to the seizure of methamphetamine and a pipe. Defendant was charged with unlawful possession of methamphetamine, ORS 475.894. Before trial, defendant moved to suppress the evidence on the ground that it was obtained during an unlawful extension of the stop. The state countered that the officer had reasonable suspicion of DUII and that his questions were therefore reasonable and did not unlawfully extend the stop. The trial court denied the motion. Defendant was convicted. On appeal, she assigns error to the denial of her motion to suppress. For the reasons that follow, we conclude that the trial court erred in denying defendant's motion to suppress and, accordingly, reverse and remand.
We review a trial court's denial of a motion to suppress for legal error. State v. Ehly , 317 Or. 66, 75, 854 P.2d 421 (1993). We are bound by the trial court's factual findings if they are supported by evidence in the record. Id. If the trial court did not make an express finding on a necessary fact, we presume that the court found the facts in a manner consistent with its decision. State v. Roesler , 235 Or. App. 547, 550, 234 P.3d 1004 (2010). We state the facts accordingly.
On an October night, Deputy Stevens was on patrol when he saw defendant, who was riding a bicycle, run a stop sign. Stevens stopped defendant for failing to obey a traffic control device, which is a traffic violation. Stevens immediately smelled a "heavy odor of marijuana" coming from defendant's person. Based on defendant having run a stop sign and the odor of marijuana, Stevens suspected that defendant was under the influence of intoxicants. He began to investigate a possible DUII offense.[1]
*52 *771 Stevens asked defendant for her identification and at some point ran her name through dispatch. Stevens told defendant that he could smell the marijuana on her and asked when she had last smoked. Defendant replied that she had smoked "[e]arlier in the day." Based on his training and experience, Stevens did not consider that answer consistent with the odor coming from her person. Stevens asked defendant whether she had any marijuana on her. She said that she did and handed him a small sealed plastic bag of marijuana. In Stevens's experience from prior DUII and drug-related cases, once he finds one drug-related item, he is typically "able to locate additional items." He also suspected that defendant had more marijuana on her because of "the amount of marijuana that [he] was smelling coming from her person." Stevens "didn't believe, at that time, that that was all she had on her," so he asked defendant for consent to search her.
Defendant consented to a search of her person and also, at some point, to a search of at least one bag that she had with her. Stevens found more marijuana and a Bluetooth headset case. Stevens requested and obtained consent to open the headset case and, inside it, found a glass pipe that he suspected contained methamphetamine residue. Stevens asked defendant "where her meth was." Defendant denied having any methamphetamine on her. She then told Stevens that she was trying to get home for a family dinner and was concerned whether she was going to jail. Stevens told defendant that, if she gave him her methamphetamine, he would not arrest her but would just refer the matter to the district attorney's office. Defendant removed a small plastic bag of methamphetamine from her pocket and gave it to Stevens. At that time, Stevens received another call, told defendant that he would refer the matter, and departed.[2] The stop had lasted about 22 minutes.
The state charged defendant with one count of unlawful possession of methamphetamine, ORS 475.894. Defendant moved to suppress the evidence, arguing that it was *772 obtained during an unlawful extension of the stop in violation of Article I, section 9, of the Oregon Constitution. The state asserted that Stevens's questions were justified by reasonable suspicion of DUII and, once he found the glass pipe, by reasonable suspicion of possession of methamphetamine. Defendant conceded that Stevens had reasonable suspicion of DUII but argued that his questions about drug possession were not reasonably related to the DUII investigation and had unlawfully extended the stop.
The trial court concluded that Stevens had reasonable suspicion that defendant had committed DUII and that Stevens therefore was allowed to ask the questions that he asked. The court denied defendant's motion. Defendant then entered into a conditional plea agreement, by which she retained the right to appeal the denial of her motion to suppress. On appeal of the resulting judgment of conviction, defendant raises a single assignment of error, challenging the denial of her motion to suppress.
We begin our discussion with an overview of Article I, section 9, as relevant to stops. Article I, section 9, establishes the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." A "stop" is a type of seizure, specifically "a temporary restraint of a person's liberty for the purpose of criminal investigation." State v. Rodgers/Kirkeby , 347 Or. 610, 621, 227 P.3d 695 (2010). A stop may be initiated when an officer has reasonable suspicion of criminal activity or probable cause for a noncriminal traffic violation. Id . at 621, 623, 227 P.3d 695.
With respect to a stop for a traffic violation, "[p]olice authority to detain a motorist dissipates when the investigation reasonably *53 related to that traffic infraction, the identification of persons, and the issuance of a citation (if any) is completed or reasonably should be completed." Id. at 623, 227 P.3d 695. Police conduct that is "beyond that reasonably related to the traffic violation * * * must be justified on some basis other than the traffic violation." Id. (emphasis in original); see also State v. Watson , 353 Or. 768, 778, 780, 305 P.3d 94 (2013) (an officer's conduct during a traffic stop must be "reasonably related" to the lawful purposes of the stop *773 and reasonably necessary to effectuate those purposes).[3] For example, if an officer develops reasonable suspicion of criminal activity during a traffic stop, the officer may investigate the suspected crime and does not unlawfully extend the traffic stop by doing so. State v. Gomes , 236 Or. App. 364, 371-72, 236 P.3d 841 (2010) ; see also State v. Pichardo , 360 Or. 754, 760, 388 P.3d 320 (2017) (a criminal investigation "can entail a broader range of questions" than a noncriminal traffic investigation, but the inquiries must still have a "reasonable, circumstance-specific" relationship to the criminal investigation).
In order to establish that an officer's conduct during a traffic stop was reasonably related to the lawful purposes of the stop, the state must be able to point to a "reasonable, circumstance-specific" relationship between the challenged conduct and the lawful purposes of the stop. Pichardo , 360 Or. at 760, 388 P.3d 320 ; accord. Rodgers/Kirkeby , 347 Or. at 623, 227 P.3d 695 ; see also, e.g ., State v. Maciel , 254 Or. App. 530, 537, 295 P.3d 145 (2013) (traffic stop unlawfully extended when officer, who had reasonable suspicion of car theft but not drug trafficking, stopped investigating car theft to investigate drug trafficking). "Whether an officer's conduct constitutes an unlawful extension of a traffic stop is a question of law." State v. Dennis , 250 Or. App. 732, 737, 282 P.3d 955 (2012).
Existing case law illustrates what does and does not constitute a reasonable relationship between officer conduct and the lawful purposes of a stop. For example, in State v. Fair , 353 Or. 588, 609-11, 302 P.3d 417 (2013), which the state cites in its briefing, officers responded to an incomplete 9-1-1 call, arrested the defendant's husband for assault, and temporarily seized the defendant to interview her as a material witness. While questioning her, the officers checked for outstanding warrants and asked about prior arrests. The Supreme Court concluded that, on the particular facts of the case, those inquiries were "reasonably necessary to determine defendant's identity" and "served two purposes *774 reasonably related at that point to the reasons for temporarily detaining" her. Id . at 614, 302 P.3d 417. Specifically, verifying the information in the database could potentially validate the defendant's identity, and asking about prior arrests was a way to "ascertain whether the defendant had a prior history of domestic violence," which was reasonably related to whether she or her husband was the assailant in the incident under investigation. Id.
A more recent case is State v. Miller , 363 Or. 374, 422 P.3d 240, adh'd to as modified , 363 Or. 742, 428 P.3d 899 (2018). The defendant in that case was lawfully stopped on suspicion of DUII. Id. at 379, 422 P.3d 240. After conducting a records check and before administering field sobriety tests, the deputy asked the defendant whether he had a firearm. Id. at 377, 422 P.3d 240. The deputy testified that he asked that question because he believed that the defendant might be intoxicated, that the defendant might have committed a crime (DUII), that "performing the field sobriety tests would put him in a compromising situation," and that there was "absolutely nothing safe about administering field sobriety tests on the side of the road at 12:30 in the morning." Id. at 385, 387-88, 422 P.3d 240 (internal quotation marks omitted). Given those circumstances, the Supreme Court held that the state had met its burden to prove that the question about weapons was reasonably related to the DUII investigation and reasonably necessary to effectuate it. Id. at 388, 422 P.3d 240.
*54 By contrast, in State v. Miller , 267 Or. App. 382, 383, 392, 340 P.3d 740 (2014) ( Miller A150565 ), on which defendant relies, we concluded that a stop was unlawfully extended when the state failed to establish that the deployment of a drug-detection dog was reasonably related to the lawful purposes of a stop. During a traffic stop, an officer developed reasonable suspicion that the defendant was driving under the influence of a narcotic. Id . at 390, 340 P.3d 740. He asked the defendant about recent drug use, including what appeared to be fresh needle marks on his arm, and the defendant admitted to past heroin use but denied current use. The officer did not believe him given what he saw. Id. at 384, 340 P.3d 740. Meanwhile, the officer's partner called for a drug-detection dog due to his own suspicions from talking to a passenger in the vehicle. Id. at 386, 340 P.3d 740. When the drug-detection dog arrived, both *775 officers took time to deploy the dog, rather than continuing to investigate the traffic violation and the defendant's potential DUII. Id. at 386, 391, 340 P.3d 740.
We concluded that the extension of the stop to deploy the drug-detection dog was not supported by reasonable suspicion of criminal activity and "cannot be supported as reasonably related to [the officer's] suspicion of DUII." Id. at 392, 340 P.3d 740 (internal quotation marks omitted). On the latter point, we explained that the "gravamen" of the crime of DUII "of course, is driving under the influence of an intoxicant," and that a drug-detection dog "detects the presence of drugs, not whether a person is intoxicated ." Id . (emphasis added). The time that the officers spent deploying the dog therefore was not reasonably related to the DUII investigation. Id. ; see also Pichardo , 360 Or. at 761, 388 P.3d 320 (noting that "[a] search of defendant's person for drugs would reveal, at most, that he had drugs on him," but it would "say nothing about where or when he got them," and it was the latter that was potentially related to the suspected crime). We then proceeded to consider whether the dog deployment was justified by reasonable suspicion of unlawful drug possession and concluded that it was not. See Miller A150565 , 267 Or. App. at 395, 340 P.3d 740.
More recently, in State v. Aguirre-Lopez , 291 Or. App. 78, 79, 419 P.3d 751 (2018), the defendant was stopped for a traffic violation related to his brake lights. When asked for his license and registration, the defendant provided an identification card instead of a driver's license and a vehicle registration with a different name. The defendant told the officer that he had borrowed the vehicle from his cousin. Id . The officer then asked extensive questions about the cousin, which the defendant later argued had unlawfully extended the stop. Id. at 80-81, 419 P.3d 751. The state argued that the questions were reasonably related to the traffic investigation because the officers wanted to ensure that the defendant lawfully possessed the vehicle in case they ultimately let him drive away. Id. at 82, 419 P.3d 751. We reversed the denial of the defendant's motion to suppress, concluding that the questions about the cousin did not reasonably relate to an investigation of the brake-light violation or the defendant's driving privileges, but instead were an attempt to determine whether the defendant was engaged in a crime such as unlawful use of a *776 vehicle. Id. at 85, 87, 419 P.3d 751. "[T]he fact that a stopped driver might commit UUV if he drove away in a stolen car, or might commit a drug-trafficking crime if he drove away with drugs in his vehicle, does not give an officer justification for extending a traffic stop to investigate those possible crimes absent reasonable suspicion that the crimes have occurred or are about to occur." Id . at 85, 419 P.3d 751.
That brings us back to the facts of this case. Defendant does not dispute that the initial traffic stop was lawful, that Stevens had reasonable suspicion of DUII, and that Stevens's question about when she had last smoked marijuana was reasonably related to the DUII investigation. Defendant argues that Stevens unlawfully extended the stop, however, when he asked her questions relevant to marijuana possession, as distinct from use. Specifically, she challenges (1) Stevens's question whether she had any marijuana on her, and (2) Stevens's request to search her. Defendant argues that those questions were not reasonably related to the DUII investigation. The state argues that they were reasonably related to the DUII
*55 investigation because, given the strong odor of marijuana on defendant's person, Stevens disbelieved defendant's claim that she had last smoked "[e]arlier in the day."
We need not decide whether the officer's first question-whether defendant had any marijuana on her-was reasonably related to the DUII investigation. That is because we conclude that his second question-requesting consent to search her-was not reasonably related to the DUII investigation.
When Stevens asked defendant whether she had any marijuana on her, she said that she did and produced a small bag of marijuana. Stevens's explanation for then asking defendant if she would consent to a search was that he did not feel that the amount of marijuana in the bag "matched up with the amount of marijuana that [he] was smelling coming from her person" and he "didn't believe, at that time, that that was all she had on her." Based on that testimony, the state argues that Stevens's question was reasonably related to the DUII investigation because he was trying to reconcile his reasonable suspicion of DUII with *777 defendant's claim to have smoked "[e]arlier in the day" and the odor coming from her person.
The problem with the state's argument is that the state does not explain how the quantity of unconsumed marijuana in defendant's possession was relevant to whether she had committed DUII, particularly when defendant had already produced one bag of marijuana in response to Stevens's prior question. To the extent that current possession is relevant to recent consumption for purposes of DUII (an issue on which we do not opine), the first bag established current possession. Finding additional marijuana would not advance the DUII investigation or help prove DUII but, rather, would only be relevant to potentially proving unlawful possession. See ORS 475B.337 (making it unlawful to possess over one ounce of "usable marijuana" in a public place). Like the officers' conduct in Miller A150565 , Stevens's question related to unlawful drug possession, not DUII.
In reaching that conclusion, the state urges us not to rely on Miller A150565 , seizing on an inconsistency between the opinion's text and a footnote therein to argue that it is not controlling. In the text, we expressly stated that the officers' time deploying a drug-detection dog was not reasonably related to the DUII investigation and explained why that was so. See Miller A150565 , 267 Or. App. at 392, 340 P.3d 740. In a footnote, however, we said that the state had not argued and that we expressed "no opinion" on whether the dog sniff was justified as reasonably related to a DUII investigation. Id . at 393 n. 7, 340 P.3d 740. We acknowledge that those statements are irreconcilable. However, regardless of how we might resolve that contradiction, it would not change the result in this case. The reasonable-relationship inquiry is always case-specific and circumstances-specific. In this case, the state has not identified a reasonable, circumstance-specific relationship between the DUII investigation and Stevens's request to search defendant.[4]
*778 We normally would close by saying that the stop was unlawfully extended, that evidence seized as a result of the unlawful extension should have been suppressed, and that defendant's motion was erroneously denied. In this case, however, the state urges us to exercise our discretion to affirm the denial of the motion to suppress on an alternative basis not raised in the trial court. We therefore address that issue next.
The state argues for the first time on appeal that, even if the trial court was wrong that Stevens's question about consent to search was reasonably related to the DUII investigation, the court was "right for the wrong reason" because Stevens had reasonable suspicion that defendant possessed a criminal amount of marijuana. In response, defendant argues that the record does not *56 support affirmance on that ground and that, in any event, we should not affirm on that ground because the record might have developed differently if it had been raised in the trial court. See Outdoor Media Dimensions Inc. v. State of Oregon , 331 Or. 634, 659-60, 20 P.3d 180 (2001) (stating requirements to affirm on an alternative basis not raised in the trial court, including that the evidentiary record must be materially the same as would have developed if the argument had been raised).
We are skeptical that the existing record could establish that Stevens had reasonable suspicion that defendant possessed a criminal amount of marijuana, especially because the trial court implicitly found that Stevens smelled smoked marijuana, not unburned marijuana, on defendant's person.[5] See Miller A150565 , 267 Or. App. at 393, 340 P.3d 740 (reasonable *779 suspicion that someone is under the influence of a drug is insufficient on its own to create reasonable suspicion of drug possession). In any event, we are unpersuaded that the record would not have developed differently had that argument been raised in the trial court. "[E]ven if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a different record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance." Outdoor Media Dimensions Inc. , 331 Or. at 660, 20 P.3d 180 (emphasis in original). Here, if the state had raised the issue earlier, defendant could have asked Stevens about the exact nature of what he smelled, about any perceived relationship between that odor and a criminal quantity of unconsumed marijuana,[6] and about how much marijuana was in the bag that defendant handed to him. Defendant also could have explored whether Stevens subjectively believed that he had reasonable suspicion of criminal possession of marijuana, a topic that Stevens addressed, at best, only indirectly in his testimony at the suppression hearing.
In sum, we conclude that Stevens's request to search defendant was not reasonably related to the DUII investigation and unlawfully extended the stop in violation of defendant's Article I, section 9, rights. That unlawful extension led to the discovery of the methamphetamine and the glass pipe. The trial court therefore erred in denying defendant's motion to suppress.
Reversed and remanded.

See ORS 813.010 (defining the crime of DUII); ORS 814.400 (making the vehicle code generally applicable to bicyclists); see also State v. Abbey , 239 Or. App. 306, 309, 245 P.3d 152 (2010), rev. den. , 350 Or. 423, 256 P.3d 1097 (2011) (recognizing application of DUII statute to bicyclists).

Stevens testified that police officers normally do not allow DUII suspects to resume driving without determining whether they are impaired, but that it is sometimes necessary to elect between calls. Stevens chose to let defendant resume bicycling so that he could attend to an emergency call.

We have held that an officer's questioning of a person during an "unavoidable lull," such as while the officer awaits the results of a records check in a traffic stop, does not extend the duration of the stop and therefore does not violate Article I, section 9. State v. Dennis , 250 Or. App. 732, 737, 282 P.3d 955 (2012). This case does not involve an unavoidable lull.

Relatedly, the state argues that it would be inconsistent with Pichardo to read Miller A150565 to mean that questions about drug possession can never be reasonably related to a DUII investigation. We do not read Miller A150565 to mean that, nor do we hold that here. Rather, we conclude only that, in this case, the state did not establish a reasonable, circumstance-specific relationship between the DUII investigation and Stevens's request for consent to search defendant.

Stevens testified that he was familiar both with the smell of "non-burnt" marijuana and with the "smoked smells." He did not expressly testify as to which he smelled on defendant's person, but he did testify that the odor immediately caused him to suspect that defendant had committed DUII, i.e. , that she had consumed marijuana. It therefore was reasonable for the trial court to infer that Stevens smelled smoked marijuana. Cf. State v. Vennell , 274 Or. App. 94, 97-98, 359 P.3d 1255 (2015), rev. den. , 358 Or. 529, 367 P.3d 529 (2016) (trial court could reasonably infer from context of an officer's testimony that the "strong odor of marijuana" that he smelled on the defendant's person was an odor he recognized as unburned marijuana). And the trial court necessarily did make an implicit finding that Stevens smelled smoked marijuana when it concluded that Stevens had reasonable suspicion of DUII based on the smell.

In Vennell , 274 Or. App. at 98, 359 P.3d 1255, we concluded that an officer developed reasonable suspicion of criminal marijuana possession when he smelled a strong odor of unburned marijuana coming from the defendant's person. When Vennell was decided, all marijuana possession was unlawful, but the quantity determined whether it was a crime. See former ORS 475.864 (2013). By the time that defendant in the present case was stopped, possession of up to one ounce of marijuana was lawful. See former ORS 475.864(6)(a) (2014). Currently, it is lawful to possess up to one ounce of usable marijuana in a public place, a violation to possess more than one ounce but not more than two ounces, and a crime to possess more than two ounces. ORS 475B.337. Defendant questions whether Vennell remains good law and identifies this as a "novel" issue that she could have raised and on which she could have developed the record, if the state had argued in the trial court that Stevens had reasonable suspicion of criminal marijuana possession.